John R. BLOCKER

v.

OIL AND MARINE CORPORATION
OF LOUISIANA, INC.

Civ. A No. 81–3909 "I".

United States District Court,
E.D. Louisiana.

Nov. 5, 1986.

Robert M. Steeg, Steeg and O'Connor, New Orleans, La., for plaintiff.

Boris F. Navratil, Breazeale, Sachse & Wilson, Max LaBranche, LaBranche and LeJeune, Baton Rouge, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

This protracted litigation is again before this Court, this time for the purposes of possible invocation of sanctions. By minute entry of April 14, 1986, this Court referred this matter to the Magistrate for the purpose of conducting an evidentiary hearing to ascertain whether sanctions would be appropriate for alleged violations of F.R.C.P. 11. Said hearing was conducted on June 13, 1986, and on July 23, 1986, the Magistrate rendered his Findings and Recommendation. The Magistrate recommended that sanctions be imposed and the parties objected to the Magistrate's Findings and Recommendation. The details of how this matter has reached this stage are set forth in the Findings of Fact of Magistrate Ronald A. Fonseca, which this Court has adopted, and which are as follows:

1. Plaintiff, John R. Blocker, filed suit on September 2, 1981 against Oil and Marine Corporation of Louisiana, Inc. (Oil-Marine) in the Twenty-Ninth Judicial District Court for the Parish of St. John the Baptist, State of Louisiana, seeking judicial partition of certain property owned in indivision by plaintiff and defendant.

2. Defendant caused the suit to be removed to this Court on September 28, 1981 on the basis of diversity of citizenship between the parties.

3. In a suit seeking judicial partition, all co-owners are indispensable parties. LSA Civil Code Article 1329.

4. On August 11, 1981, twenty-two days before plaintiff filed his suit, the property to be partitioned was owned by plaintiff and Oil-Marine in the following proportions: Blocker 1224/1344; Oil-Marine 120/1344.

5. On August 11, 1981, Henry O'Connor, Esquire, co-counsel for plaintiff, sent Oil-Marine a request by mail seeking an amicable partition of the property at issue. Mr. O'Connor advised that suit would be brought within ten days to obtain a judicial partition if a voluntary agreement could not be reached.

6. After receiving Mr. O'Connor's letter, Oil-Marine through its President J. Burton LeBlanc, sold on August 19, 1981, one-half of its undivided interest in the property to Colorado-Louisiana Oil, Ltd. (Colorado-Louisiana).

7. The sale between Oil-Marine and Colorado-Louisiana was not recorded until August 24, 1981. (Exhibit Court 1).

8. On August 20, 1981, Mr. LeBlanc replied to Mr. O'Connor's letter of August 8th rejecting O'Connor's request to settle amicably. Although the sale by Oil-Marine to Colorado-Louisiana took place the day before Mr. LeBlanc's reply, he made no mention of the sale in his letter.

9. At the time of sale to Colorado-Louisiana, LeBlanc was aware that joinder of all co-owners of property in a suit for judicial partition of that property was essential. (Tr. pp. 36, 37).

10. The sole purpose for the transfer of a portion of Oil-Marine's interest in the property to Colorado-Louisiana was to hinder or delay Blocker's attempt to effect a judicial partition of the property. This conclusion is based upon the following facts established during the evidentiary hearing: a) Colorado-Louisiana's Articles of Incorporation were executed on August 12, 1981 and acknowledged on August 14, 1981, one and three days respectively after plaintiff's letter requesting an amicable settlement

was sent. (Exhibit Court 4). b) Colorado-Louisiana was incorporated by Douglas Allen at the request of LeBlanc (Tr. p. 25); c) no stock was ever issued by Colorado-Louisiana (Tr. p. 26, 27); d) LeBlanc assumed the presidency of Colorado-Louisiana, as was originally intended, within a year of its incorporation (Tr. p. 26); e) Allen contributed nothing to the formation of Colorado-Louisiana (Tr. p. 27); f) the only asset ever owned by Colorado-Louisiana was the interest in the property purchased from Oil-Marine (Tr. p. 29); g) no specific use was or has been made of the property by Colorado-Louisiana (Tr. pp. 29, 31); h) Colorado-Louisiana has received no income since its inception (Tr. p. 31); and i) the consideration for the transfer from Oil-Marine to Colorado-Louisiana was a promissory note. No payments have ever been made on the note (Tr. pp. 27, 28).

11. On September 28, 1981, on the date of the transfer of this action from state court to this Court, Boris F. Navratil filed an answer on behalf of Oil-Marine.

12. The answer, which was signed by Mr. Navratil, made no mention of the fact a third entity (Colorado-Louisiana) was part owner of the property at issue and as such an indispensable party to the suit.

13. Plaintiff filed a motion for summary judgment on February 28, 1983. In support of the motion, plaintiff filed a list of undisputed facts among which was the claim that:

"John R. Blocker is the owner of an undivided 1224 interest, and Oil and Marine Corporation of Louisiana, Inc. is the owner of an undivided 120/1344 interest, in the immovable property at issue in this lawsuit."

14. In his response to plaintiff's motion, Mr. Navratil did not contest the fact that plaintiff and Oil-Marine were the sole owners to the property.

15. At some time prior to April 4, 1983, Robert M. Steeg, Esquire, co-counsel for plaintiff, received information about the sale of the property to Colorado-Louisiana.

16. Steeg immediately contacted Navratil and requested confirmation that the sale had taken place.

17. Navratil confirmed that the sale had taken place and sent Steeg a copy of sale documents.

18. Steeg and Navratil discussed the effect the existence of the sale could have on the litigation in its present posture, but agreed among themselves that no action would be taken to amend the pleadings until after Judge Mentz ruled on plaintiff's motion for summary judgment.

19. Steeg's strategy was to await the Court's decision on his client's motion. If he lost the motion, there was no need to bring the interest of Colorado-Louisiana to the attention of the Court. If he won, believing that Colorado-Louisiana was an alter ego of LeBlanc, he felt it would be a simple procedural matter to add Colorado-Louisiana to the suit to make the Court's judgment effective.

20. Neither LeBlanc in his testimony nor Navratil in the statement furnished the Court, pinpointed the exact date Navratil learned of the sale of the property. Both were vague and non-committal in responding to a request for this information.

21. LeBlanc testified however that he had discussed the existence of the sale with Navratil and its possible use to defeat an adverse judgment against Oil-Marine. (Tr. pp. 38, 39).

22. There is no evidence to indicate or suggest that Navratil participated in, advised or aided LeBlanc in the transfer of the property from Oil-Marine to Colorado-Louisiana.

23. Nor is there any evidence that Navratil was aware of LeBlanc's purpose for transferring the property until LeBlanc notified him of the transfer.

24. Although, as noted above, neither LeBlanc or Navratil could pinpoint the exact date of their discussion, it could be assumed because of the significance of the transfer, vis a vis the outcome of the litigation, that LeBlanc told Navratil about the

transfer and its purpose in the early stages of the suit.

25. It would be improper however to base a recommendation for Rule 11 sanctions on an assumption, no matter how strongly we feel the assumption to be correct.

26. There is no question however that Navratil was aware of the transfer prior to his filing an opposition to plaintiff's motion for summary judgment.

27. Steeg requested information from Navratil about the sale prior to April 4, 1983. Navratil filed an opposition on behalf of Oil-Marine on April 13, 1983. The Court rendered judgment in favor of plaintiff on September 20, 1983, 571 F.Supp. 996, some five months after Steeg's and Navratil's exchange of correspondence.

28. On January 15, 1986, some two and one-half years after the Court ruled on plaintiff's motion for summary judgment, Colorado-Louisiana was made a defendant in this action. Colorado-Louisiana moved immediately to vacate the Court's summary judgment on the grounds that it was not a party to the action when the judgment was entered.

29. Colorado-Louisiana is represented by Max LaBranche, Esquire.

30. LeBlanc testified that he personally hired LaBranche to represent Colorado-Louisiana and promised to pay his fee. (Tr. pp. 40–42).

31. LeBlanc told LaBranche about the true relationship between the two corporations and that he had "organized" Colorado-Louisiana. (Tr. p. 42).

32. There is no evidence that Douglas Allen was aware of the purpose behind LeBlanc forming Colorado-Louisiana and transferring part of Oil-Marine's property to it.

33. We find that both Navratil and Steeg violated the tenets of Rule 11 by failing to advise the Court about the existence of the transfer.

34. Steeg filed in support of his client's motion a statement of uncontested facts indicating that the only owners of the property were plaintiff and Oil-Marine. Navratil did not contest this fact in opposing plaintiff's motion.

35. Steeg did not learn of the sale until after his motion was filed. Nevertheless his failure to advise the Court of the true facts constituted a continuing representation to the Court that the statement contained in his motion was true when he knew that was no longer the case.[1]

36. The same reasoning applies to finding Navratil in violation of Rule 11. He failed to point out in his opposition that there was another alleged co-owner of the property in question thereby acquiescing in plaintiff's representation that only plaintiff and Oil-Marine were owners of the property.

37. Sanctions should be imposed on LeBlanc because of his direct participation in the transfer of property. The transfer was for the sole purpose of hindering any partition action filed by plaintiff.

38. LaBranche violated the tenets of Rule 11 by filing the answer and motion to vacate the Court's summary judgment on behalf of Colorado Oil.

39. LaBranche was advised by LeBlanc of the true facts surrounding organization of Colorado-Louisiana and the fact that it was LeBlanc's corporation.

40. LaBranche was hired by LeBlanc and his fee is to be paid by LeBlanc.

41. LaBranche failed to comply with the Court's order to produce Allen at the hearing and to furnish certain documentation on his client's organization. To justify his failure, he furnished the Court with two letters he wrote to Douglas Allen requesting that he forward the documents and information requested by the Court.

42. In light of LeBlanc's testimony that Labranche knew that Colorado-Louisiana was his corporation, we view LaBranche's tendering of letters written to Allen as a

---

1. Steeg knew about the sale before oral argument on his motion.

further attempt to misdirect the Court's efforts in learning the truth about this matter.

43. At the conclusion of LeBlanc's testimony at the evidentiary hearing, Navratil and LaBranche were each given an opportunity to question LeBlanc further. Both declined to question him. (Tr. pp. 42, 43).

The Court heard oral argument on the parties' objections to the above on September 3, 1986, and allowed the parties to file additional memoranda by September 10, 1986. By order dated September 8, 1986, this Court approved the Magistrate's Findings and Recommendation, with the exception of the recommendation of sanctions against Mr. LaBranche. The issue of what other sanctions were to be imposed was taken under submission. The Court renders its opinion herein.

## COURT'S OPINION

One of the express rationales for F.R. C.P. 11 is to avoid the interposition of any matter designed for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." It would be difficult to imagine a situation more fitting for sanctions than the one presently at bar.

After reviewing the evidence, it is manifestly evident that the true locus of fault lies with Oil and Marine Corporation of Louisiana, Inc., in transferring a one-half interest in the disputed property, and with Colorado-Louisiana for accepting it. This transfer of a one-half interest in the subject property in this matter by Oil and Marine to Colorado-Louisiana was the origin of the problem which precipitated the actions of the other parties. To be certain, the actions of Messrs. Steeg and Navratil aggravated a situation rather than redressing it; however, the Court views those actions as having been inspired out of legitimate goals, not an attempt to further impede these proceedings. Counsels' actions were in this sense passive, as they allowed themselves to be "used" to achieve Mr. LeBlanc's objectives.

This Court is not certain as to what, if any, agreement existed between Mr. Steeg and Mr. Navratil in regard to the re-transfer of the interest in the property to Oil-Marine, so as to make it subject to the judgment herein. If an agreement did not exist, then it is troubling that neither party deemed it advisable that the Court should be informed of this transfer. If an agreement did exist for the re-transfer, it is even further troubling that such an agreement was not adhered to, and that the parties now dispute it.

However, there is ample evidence as to the motive and effect of the transfer of the property. It is there that the blame for this unfortunate situation must be placed. The Magistrate found, and this Court agrees, that the sole purpose of the partial transfer of the property was an attempt to hinder or delay this litigation to insure that the defendant would have not one, but two chances to litigate the claim. Further, Mr. J. Burton LeBlanc, owner of both transferor and transferee corporations, was responsible, in this regard, for the aforementioned activities. The assertions by Mr. LeBlanc and Oil and Marine that said transfer was done to effect legitimate business purposes is mere scatological rumination.

The Court notes with interest the fact that Mr. LeBlanc, himself an attorney, attempted to assert his rights under the Fifth Amendment to the United States Constitution at the evidentiary hearing for the Rule 11 sanctions, which are non-criminal in nature. The Magistrate, of course, properly denied this.

Hence, the Court feels that the proper place to levy sanctions is with Oil and Marine, Colorado-Louisiana Oil, Ltd. and Mr. LeBlanc. Under the authority given to this Court by Rule 11, as well as the general contempt power, this Court feels that a fine is appropriate as against these parties. Accordingly,

IT IS ORDERED that:

Oil and Marine Corporation of Louisiana, Inc., Colorado-Louisiana Oil, Ltd. and J. Burton LeBlanc jointly and severally shall pay unto the Clerk of this Court the sum of

$7,500.00 to be used for the general administration of justice. Said fine is to be paid not later than DECEMBER 1, 1986. The Magistrate's Recommendation is amended to the above extent.